Close enough, your honor. Thank you. Good morning, everybody. May it please the court. My name is Martin Sirkel and I'm here with my co-counsel, Ms. Bonnie Robinberger, with the United States Department of Justice. Collectively, we're here representing T.W., a student with significant cognitive and developmental disabilities, a former student at the Dallas Independent School District where she was sexually assaulted by another student. We call him V.A. We are here because the district judge determined that because T.W. received special education services as contemplated by the Individual Disabilities Education Act, or IDEA, and did not exhaust her administrative remedies as contemplated by 20 U.S.C. 1450L of the IDEA in a timely manner, her claim based upon Title IX of the Educational Acts of 1972 must also fail. We believe the good judge erred, and as our brief denotes, we ask that the court remand the case back to the district court. I only have five or six minutes in this first portion, so we're going to go through as many things as I can, but obviously, I'd like to really respond to questions because, to a large extent, our briefs speak for themselves. The first thing I'd like to address simply is that Supreme Court case law has already decided that there's no administrative exhaustion component under Title IX. That was done in Fitzgerald v. Barnstable School Commission and Cannon v. University of Chicago. So we believe that tells the court and tells us the direction that we need to go. Of course, I imagine the analysis doesn't stop there, of course. We also ask the court to look at the plain language of the statute. The plain language of the statute doesn't have anything in it at all that talks about Title IX. It does talk about administrative exhaustion requirements under Section 504 where there's FAPE issues. It does talk about exhaustion issues for ADA. It also talks about Constitution and other laws. Counsel for the school district has, in their brief, that this phrase, Constitution and other laws. But once again, that's not really the plain read of the statute. But even if we want to go a little bit outside the plain read of the statute, then let's look at what Title IX does and what Title VI does. Well, interestingly, Title IX does have an administrative exhaustion component. Congress wanted to put an administrative exhaustion component in Title IX, but they didn't extend it to children with special education needs. There's no exhaustion component in Title VI at all. There is an administrative exhaustion component in IDEA, once again, for agencies, just like there is in Title IX. But if Congress wanted to put a statement or a phrase that Title IX had to be exhausted, then they could have put it in at any time when they reauthorized IDEA. They could have put it in at any time when they looked at Title IX. They could have put it in at any time when they had Title VI. They never have done that. Counsel also and the school district also says that the legislative history of IDEA supports the position that Title IX complaints also had to go through exhaustion. There's nothing in the legislative history that says that at all. They make that statement, but there's no citation to any legislative record, nor is there any citation to any case law that suggests that same issue. So once again, if we look at the statute and we look at the Supreme Court case law that I believe is controlling on the issue, there's no need to exhaust these types. Okay, if Jane Doe were not a person in need of FAPE, would she have the ability to bring a Title IX claim based upon the conduct involved here, the young man being put next to the bathroom in that situation? Absolutely, Your Honor, and that's probably the main gist of our discussion overall, that, you know, we have children that normal regular ed children, if they're sexually molested at school, they don't have to go through this. But do they have a Title IX claim in that situation? Yes. Okay, so you're saying that the disabilities she has are unrelated to the specifics of this Title IX claim, and therefore the, as I understand it, the intersection is where we have the problem. If there's an intersection of the two, then you have to do the exhaustion. You're saying there's no intersection. I would say there's no intersection. I also want to jump to FRI. What FRI says to us, it looks at, it asks us to have what we call a claims-based analysis to these types of causes of action, the gravamen of the complaint, as the term is used. It does not want us to deconstruct a client's petition or complaint and look for words of education or education or classes or various types of remedies. The issue of remedies was rejected, actually, in the Peninsula case, Payne versus Peninsula case, the Ninth Circuit case. FRI superseded that. FRI says, let's look at what the complaint says. So to go back to your initial question, this is a complaint about an attack on someone's dignity. It really has nothing to do with educational classes. It has nothing to do with whether they're passing their classes or not, you know, academic or non-academic benefit when we look at IDEA based upon the Michael F. case. That part of the analysis really is important. And to take your question a step further, Judge Ames, so if a child without a disability doesn't need to go through exhaustion, a child with a disability that doesn't get Section 504 or IDA doesn't have to go through exhaustion, a child with a disability that gets Section 504 services doesn't have to go through exhaustion, but here we have, arguably, a child with a disability that most have the biggest impediment to having her legal rights effectuated in court. I pass to my co-counsel, and I'll be back for rebuttal. Yes, you've saved time for rebuttal. Thank you. Thank you very much, Your Honor. Ms. Robin Vergeer. May it please the Court. My name is Bonnie Robin Vergeer, and I'm here on behalf of the United States as an amicus supporting plaintiff appellant. This should not be a difficult case. The district court erred in dismissing plaintiff's Title IX claim for failure to exhaust IDEA administrative procedures. I'd like to focus on two reasons why the district court was wrong. First claims, and we agree with what Mr. Serkiel said about claims filed under Title IX, excuse me, are not subject to the exhaustion provision of the IDEA because that provision doesn't apply to Title IX claims, and the court could just stop there. But even if Title IX claims are potentially covered by this provision, this plaintiff's claim is not. Under the Frey analysis, the crux of her complaint is not about the denial of a free, appropriate public education or FAPE, but about the school's failure to keep her safe from sexual harassment and rape by a fellow student. So this court should reinstate her lawsuit. I'd like to touch briefly on the first point and then spend most of my time on the second point. So Title IX is not subject to the IDEA's exhaustion provision because it's not a federal law protecting the rights of children with disabilities. The school district says, well, neither is the Constitution, so Title IX should be lumped in just like the Constitution is. But the catch-all provision, other federal laws, is actually referring to federal statutes. It's not referring to the Constitution, and you can see that by the fact that when the provision was actually first enacted in 1986, that's exactly what it said. It said the Constitution, the Rehab Act, or other federal statutes protecting the right of handicapped children and youth. And then in 1997, when as the ADA was specifically added, no Title IX was not added. But even assuming that some Title IX claims could potentially be subject to the provision, this one is not. The Supreme Court said in Frye that a plaintiff is required to exhaust IDEA procedures only if the complaint seeks relief for the denial of the FAPE. This complaint is not seeking such relief. The crux of the complaint seeks relief for sexual harassment and assault and rape at school. So let's be clear about what we're talking about. Over several months, the harasser repeatedly grabbed the victim's butt and genital area, hugged and kissed her, kept trying to pull her into the bathroom at the back of the classroom. The victim and her mother kept reporting this to the school, but the school didn't take action to keep her safe, and the harasser eventually did succeed in pulling the victim into the bathroom and raped her. In Frye's terms, the complaint seeks relief for a, quote, simple discrimination irrespective of the IDEA's FAPE obligation, unquote. Any student on these facts with a disability or without a disability could have sued the school for violating Title IX, and the upshot of the district court's analysis is to create a two-tier system in which students with disabilities may not file Title IX claims but have to go through an IDEA administrative procedure process, but students without disabilities can go directly to district court with their Title IX claim. The district court went astray by equating the complaint's allegations about the denial of educational opportunities, which was required to be pleaded but if we don't agree with you overall, then we get to the question that's on page 27 of your amicus brief, which is this issue of seeking money damages. If we were to say, well, in general, you have to exhaust, but not when you're seeking money damages, isn't everybody going to seek money damages? With respect to the damages claim, we have argued that seeking damages claim takes that claim outside the IDEA process, but in this case, you don't even need to go that far. No, I know that, I'm asking a what if. You're here, I'd like to get your thoughts. You seem to be supporting the plaintiff on this specific point and I'm trying to understand it because it seems like that would kind of swallow up the whole, everybody would probably rather have the compensatory damages because then they can go out and hire tutors and go to private schools and so forth and not have to continue to battle with the public school system. Why wouldn't they then just seek money damages, say my child is emotionally damaged by this, and recover, and then just obliterate the whole IDEA concept? Well, the IDEA does not provide damages relief, and under the text of the statute, if she's seeking relief that is not available under the IDEA, then it would be futile, and IDEA recognizes futility, the Supreme Court's recognized futility in the Honig case. It would be futile to make that student go through the process. If what the complaint really is seeking and this is not a magic words test, this is looking at what the crux of the complaint is, what the plaintiff really is seeking is an improved IEP or she's complaining about denial of FAPE and wants those types of remedies, then the complaint is seeking relief that the IDEA provides and the exhaustion provision would kick in. So you'd have to look at... What if they're saying that in the course of all of this giving me the free appropriate public education, you have been really nasty, and you've called me names, and you've given me emotional distress, and I want money damages for that. Would that be subject to exhaustion? No, because that's not the type of remedy that is provided through the administrative... So then why won't everybody make that claim? Because when it gets to the Fifth Circuit, people have been fighting with the school district for a while to get something in these IDEA Act cases, and again, I'm not faulting either side. Everybody's got their position, but that's how it got... It's usually years of fighting with the school district, and along the line, they're saying their child is being harmed by that. And if the child is being harmed through that action, and they've got it, and they have a claim under statute under the IDEA, then the fact that they're seeking damages would reinforce the fact that they're not seeking relief for denial of FAPE. And if I just might turn to a second, it's not on the damages point, but just to remind this Court about how the Court in Frey essentially has addressed, in general terms, this kind of problem. The hypothetical in footnote 9 in Frey is analogous. If a teacher strikes a student with a disability and then sues under statute other than the IDEA, the Court acknowledged that that suit could be said to relate to the student seeking relief for denial of FAPE. And in that hypothetical, it's not the crux of the complaint, that the student is seeking that relief. And the Court also answered the two questions, the clues, in that same footnote 9 by pointing out that a child could file a suit, in that example, against an official at another kind of public facility, and so could an adult who was subject to similar treatment could do that. And all of that is true here as well, a student who is subject to peer sexual harassment in a library or a camp or some other educational program that's not about a FAPE, that's receiving federal financial assistance, that student could go ahead and file a similar claim. And so could a teacher in this school, if a teacher was subject to peer sexual harassment in school under this circuit's precedent, it'd be a Title VII claim, not a Title IX claim, but the Court's recognized that the two statutes would similar types of employment discrimination claims. And so that just shows you, just from that one footnote, I think, how the Court should take a look at a case like this. The school district argues that the plaintiff really is seeking IDEA relief because the prayer seeks things like medical counseling expenses, damages for impaired educational capacity, but the plaintiff's not seeking those things in the sense that the IDEA provides, like medical, psychological, counseling services. They're related services when required to assist the child to benefit from their special education. They're not designed to help a child recover from being sexually assaulted and raped in school. And simply compensatory... Being sexually assaulted is not a disability. It is a crime and it results in problems. It does, a wide range of problems. And that's true whether you began the situation with a disability or you began a situation as a child with perfect health. That's correct. Compensatory education is designed to address the denial of a fate. It's not designed to help a child recover from being sexually assaulted and raped in school. Really what this plaintiff is seeking is what any plaintiff with a disability or without a disability would have been asking for if they had suffered the same type of persistent sexual harassment and rape at school. And the upshot of the district court's order is to create this two-tier system, which is not required by the IDEA. Thank you. All right. Thank you, Ms. Robin Bruguier. Ms. McIntosh? May it please the court? The crux of their complaint here is a violation of fate. They complain about this as being unfair because they view the IDEA's administrative procedures as being a barrier to their relief. But in fact, they are a door to faster relief than any federal lawsuit can ever provide. Neither the IDEA nor Title IX were passed in order to give parents a path to sue for money damages. Rather, both laws were passed to help ensure students receive the education to which they are entitled. But whether you think the exhaustion procedure is a positive or a negative, why should a person with a disability be treated differently than a person without a disability in the exact situation, i.e., the raping fellow student who's allowed willy-nilly to rape her while the school looks away? Because when a child with a disability alleges that they are harmed educationally, those alleged educational harms can be remedied more quickly through the administrative procedure than through the federal lawsuit procedure. After they remedy those harms and get the child the educational support they need, they are still free to file a lawsuit in federal court and seek money damages. But the point of both is to stop... Just separate. You know, in school, you also have other troubles, and those are happening at the same time, not, you know, years from now. So if you suddenly are helped, you know, you get more tutors to help you with school, that doesn't change the fundamental... I mean, this is a huge deal to be raped as a teenager. It's not something that can be solved by learning the algebra, okay? Yes, Your Honor. I don't understand how the two are really overlapping. They overlap because the... Well, first, I would point out that the IDEA doesn't care why you're struggling in school. It cares that you're struggling... If you are a child with a disability and you are struggling in school... Actually, it does care why. The IDEA Act is to address struggles in school that are caused by the disability. And so, yes, maybe overall it might help you even if you have other issues. Maybe your parents are mean to you on top of the disability issues. But that's what it's for. If I can't hear, it's to provide me with, you know, an iPad that will give me real-time transcription of what the teacher is saying. Or if I can't see, it's to give me something in braille. It's to help me put together a program that will help that child be able to be mainstreamed in school and still learn as much as they can. That is correct, Your Honor. You have to have a disability and the services need to be connected to that disability. But the IDEA does not care why, what caused that disability. If it's trauma, because we know children of trauma who are in foster care are much more likely to have a learning disability and be in need of special education services. But that's not what caused her disability. It's not. But the rape simply caused a new set of problems. And why are those covered by this act, rather than treated as any other, any teenage girl who is raped like this, in a situation where the school doesn't give a flip, at least taking their allegations as true, which we should for this purpose, is going to harm any young girl, whether or not she began the day with what we call a disability. So I don't know why we have to treat Jane Doe differently, whether you consider it worse or better, differently than Joni Doe, who did not start the day with a disability. Because the way it impacts her is inevitably, the way a special education student is impacted is often inextricably intertwined with their disability and the special needs they already have. And a hearing officer that they have access to, to get a decision within 75 days under the law, and to order the exact remedies they're asking for money to pay for, can get it to them faster. And it's somebody with expertise in the specialized needs of that child and the the impact that has on their education and all the other complicating factors. In addition, when you're looking at the standards under a Title IX claim, many of those standards are ones that, if you're going to look at whether or not the school district was clearly unreasonable in leaving an alleged sexual assault victim in the same classroom with her alleged assaulter, you have to know what did her IEP call for. Was it reasonable for her to be left in that classroom prior to that assault or not, which would be a question under her Title IX claim? That's a question that is best answered by people who know why was she placed in that classroom in the first place. Why did that IEP call for her placement in a functional life skills classroom? And more importantly, the educational harms that for her. You know, because you talk about how wonderful the exhaustion would be, but we know that in this case, if we rule that way, she gets nothing. What have you all done? I mean, presumably you have to care about students, regardless of whether we force that or not. What have you all done for her after this horrible situation occurred on your watch? Not you personally, but your client's watch. After the alleged assault, there was an ARD committee held that was discussed to discuss the parent's concerns and then the parent moved her to a different school. The parent did not, the first time the parent sought relief, sought compensatory services for her child through the school system was when she untimely filed her IDEA complaint after the first lawsuit. Has DIST done anything to avoid this problem in the future? I'm not talking about with her, I'm just talking about in general, because it's very, very disturbing to think that this happened, that this kid was put next to the bathroom. This alleged assault, or whether alleged or not, is being put next to the bathroom where he can get to this girl. Those are the alleged facts, yes, your honor. We know you have to take those facts as true for the purposes of the decisions before you here today, but we disagree with the Do you disagree that he assaulted her? We don't know the answer to that question, but we don't agree with the description of what they say, and I think there is serious doubt as to whether he assaulted her. Well, I think that that's something any school district should be concerned about, whether they're held liable or not, is protecting their students, because this is a very, very serious situation. It is, your honor, and Dallas ISD is continually in the process of improving their Title IX policies and procedures and are always looking for ways to keep children safe and to do better. I hope that's true. Thank you. The other point, one other point, thing I would point out is that, first of all, that you asked the question of the Department of Justice about money damages. Money damages do not and should not immediately exempt someone from IDEA's exhaustion requirements. Under the IDEA, I mean, under this court's precedent, this court has twice affirmed district court decisions dismissing claims for failure to exhaust where the plaintiff sought money damages. In addition, the 1st, 2nd, 6th, 8th, 9th, 10th, and 11th circuits have all held that seeking money damages does not exempt you from exhaustion. In J.M.B. Francis Howell, the 8th circuit held that the, quote, the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought, and that is post-Frey decision. And that's because the 8th circuit recognized that when Frey interpreted the phrase relief under 1415, 2nd 1415L of the IDEA, they defined relief as seeking relief for the denial of a free and appropriate public education. They did not look at the specific remedy, such as whether you are seeking compensatory damages. The 9th circuit has the, when the IDEA, when the plaintiff is seeking, I'm sorry, yes, when the, when a plaintiff seeks an IDEA remedy or its functional equivalent, and that is exactly what this plaintiff is doing here today. She is, she is seeking damages in order to pay for services that DISD could have been The other, the other thing I would point out here today is that the reasons for, the reasons that they put on here for why you should not look at, you should not even examine the substance of this plaintiff's complaint, but instead say exhaustion isn't required because it's a Title IX claim or because it's, because it seeks money damages, attempt to apply a bright line rule on a very slippery slope. And it attempts to, it would reach much further than this case. What do you mean about, what is the slippery slope here that, for the bright line? The bright line, what if the rule was, I understand about the money damages, but what if the rule was if you could have brought the same claim as a non-disabled person, you know, before the event occurred, let's say the rape, the morning of the rape, you were not disabled, then there's a rape, that person could have brought a Title IX claim, then a person who was disabled that morning and then rape can bring a Title IX claim without exhaustion. Why is that rule a slippery slope or what is the problem with that rule? The problem with that rule is that Title IX and the other federal statutes that protect children, all children, including children with disabilities, protect against a variety of things that do not, well beyond assault. For example, let's say that somebody invokes Title IX by, the most obvious example would be saying, I was denied a free and appropriate public education because I was discriminated against. Are we going to say that that does not seek a relief for the denial of a free and appropriate public education and doesn't fall under 1415L and the Frye decision? What if the person says I was... A non-disabled person couldn't bring that claim because they wouldn't be, I mean, they wouldn't have a claim for a free appropriate public education because they're already getting that presumption. Correct, Your Honor. What if they say, however, that they suffered educationally, which in some, for a special ed student, they're also invoking their free and appropriate public education rights, but for a non-special ed student, they're just talking about their general educational harm because of a, because there was a student in their class who was harassing them and using hearing officers regularly and courts regularly consider whether or not bullying harassment has denied a plaintiff a free and appropriate public education. A non-disabled student can bring that claim for educational harm based on this gendered bullying, but it's still a claim that under the Supreme Court's case law, if they are seeking a fate of relief for the denial of free and appropriate public education, it needs to be exhausted. And that's why the Supreme Court didn't focus on what the instigating injury... So someone who was perfectly healthy, no disability of any kind whatsoever, in the morning gets raped that afternoon at the school and brings a Title IX claim saying, among other things, you've made it impossible, I can't even go to school anymore, I can't even think anymore, that person has to bring an IDEA Act claim? No, Your Honor, that person does not have to. They could bring a Title IX claim. They could bring a Title IX claim. I would also point out that, you know, in addition to the fact that we view and we believe Congress viewed and the Supreme Court views the administrative procedures of the IDEA as a benefit that gives disabled students access to faster decisions made by experts and that ensures that their parents are an interactive and integral part of making sure that that happens. When you look at the... They make a point about the fact that the statute of limitations is different, right? They're saying, okay, one of the reasons this is unfair is because the statute of limitations between the two programs are different. But they are different not just in Texas, but they vary from state to state. There are, in fact, states in which the IDEA statute of limitations is longer than the Title IX statute of limitations. And this matters because what you're saying is, if you bring a claim under Title IX or you bring a claim for sexual assault, either one of those attempted bright-line rules suggest that that means that it is de facto. If you are claiming sexual assault, you are not claiming relief for the denial of free and appropriate public education. If you're not going to look at their claims, if you're not going to analyze the substance of their complaint, that's what you're saying. And if that's the case, that means that child no longer has access to the IDEA's because of a sexual assault. The flip side is also true. If you're saying, I mean, it works both, it would go both directions. But if we're trying to figure out Congress's intent, Congress obviously didn't think the statute of limitations was a key point because they kind of essentially left it to the state, so we can't really factor that in. Where does it indicate in the statute that the Congress thought the exhaustion process was a school? The administrative procedures part is what benefits the child. And in fact, the section 1415 that contains the exhaustion requirement is called procedural safeguards. It is clear from that that they are forcing the school district to convene a resolution meeting within 15 days of a parent filing a due process complaint. If they have not resolved it within 30 days, that parent has access to an independent hearing officer who has only 45 days to hold a due process hearing and issue a final decision providing all of these remedies. In addition, and this is part of the reason that you can tell that Congress viewed this as extra protections, if parents don't get a copy of those procedural safeguards, that any statute of limitations, no matter what one state says, is thrown out the window. In other words, unlike this Court's case law on Title IX claims as it was given in King-White v. Umbel ISD or any other civil case where you only have to know the facts giving rise to your injury and you do not have to be aware of the law to start your claim accruing, that's not the case with the IDEA because we give them special protections. Because these are the children who are most in need of educational protections and we want to get them their educational remedies as quickly as possible. In addition, the courts recognize that the exhaustion requirement is important because it requires parents to act quickly and we want to encourage parents to act The goal here is to get the child the education they need to have access to, and that's the same in Title IX. In Title IX, an OCR complaint can often get resolved more quickly than a Title IX complaint and can get educational needs to children more quickly. The fact of the matter is, when it comes to education statutes like this, the point is to get the child access to an education. In addition, the statute, they say that we shouldn't look at Title IX or other statutes because it says other federal laws. However, that phrase under the Supreme Court's construction case law says that a broad phrase at the end of a long list must be interpreted in connection with that list. That list includes the Constitution, not just Section 504 and the Rehabilitation Act. The Constitution protects all children, not just those with disabilities. It protects them from all forms of harm, not just harms that are based on their disability and not just discrimination that is based on their disability. In sum, we ask you to uphold the district court's ruling because doing so advances the substantive rights guaranteed by the IDEA's procedural safeguards and doing so will positively impact children in schools throughout this circuit. Thank you. Thank you, Ms. McIntosh. Mr. Sergio. Thank you. A few brief points, Your Honor. Of course, the position that I've enunciated since I've been here is that Title IX does not apply at all to exhaustion issues. My call counsel has taken another position that I want to speak about here just briefly, is that if the court does not want to give a categorical statement that Title IX never needs to be exhausted, then this particular case does not need to be exhausted for a number of reasons. Let me ask you this. What is your response to the argument that exhaustion is actually helpful? We've been treating it as if we're burdening the disabled student more than the non-disabled student, but counsel opposite has made the argument that we're benefiting the disabled student by giving her, in this case, access to a quicker resolution than you can get in the ordinary federal district court. What do you say to that? Regular education students and, as I mentioned before, other disabled children have access to the Title IX school district policies and procedures that permit them to get, as counsel discussed, counseling services and So the idea that going through a 75-day process that has potential for an appeal, then you have to go to court and saying that helps a person with special needs better than just having it done at the beginning, which is what the school district policies and procedures require to happen for every other type of student out there does not make it better for a student with disabilities at all. The other thing I'd like to talk about is what can a hearing officer give? Let's go back to the actual facts of the case. Hearing officer couldn't make VA move away from her. The hearing officer couldn't put VA in a different room or have him required to have a one-to-one or move him to another building or to another campus or to the juvenile detention center or a residential treatment facility, couldn't move him to another campus. So a hearing officer could not help her. Her immediate need was to have this young man removed from her environment, and that is what school district policies and procedures... Hearing officer could have moved her. Well, by then, actually, that's a very good point, Your Honor. That goes into my next short response about why the facts of this case don't require exhaustion. It's called the futility or mootness. By then, she had been gone. In the Fifth Circuit case of... But I mean, Ms. McIntosh would say that was, you know, the parents' choice. You always have the choice to put your child in a private school, assuming, arguendo, you have the money, and then you're not dealing with the public education system. Well, that goes to the gravamen of the complaint. Is the gravamen of the complaint healing her IEP, or is the gravamen of the complaint the damages that she experienced because of the assault, the sexual assault in the first place? What about the argument that a person who begins the day, as opposed to, say, being deaf or something like that, a person who begins the day with that is going to have a reaction to a rape that requires further educational work in a way that perhaps someone that didn't begin the day with that disability... Oh, that's absolutely... I mean, they both suffer. I don't deny that, but there was an argument to that effect. I'm asking you to the Title VI elements that we went through here in the Fennell case, the ADA and 504 elements we went through in the state of Lance v. Louisville, all those different cases that talk about discrimination or harassment or bullying, which you brought up a little bit earlier, in this case, sexual assault, require, as an element, a deprivation of educational opportunity, or also, depending on terminology or the facts, a deprivation of equal access to educational experiences, in this case, to the same extent as non-sexually harassed students. So, yes, education is always a component of it. I mean, that's one of the things that Frey mentioned, is that if there's an event that occurs at a school district, one can always shoehorn what happened at the school into an idea claim if that's the goal, but that's not what Frey tells us. Frey tells us that the grovelment of the complaint, in this case, is an assault on a child's human dignity. In the few moments I have left, I'm going to ask the Court to look at a concurrence written by the Honorable Circuit Judge Keflage in FH v. Memphis City Schools. In that case, he says, to characterize the student's injuries as educational is to belittle them. The grovelment of the complaint is not the conduct described in the complaint or his scores or his grades. Just give us the citation in the page because you're out of time. That's perfect, Your Honor. Thank you. 764 F3, 638 6th Circuit. All right. Thank you. Your time has expired. Thank you so much. And all of today's cases are under submission, and the Court is in recess under the usual order.